JEROME S. REED AND MAXINE REED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reed v. Commissioner
Docket No. 26921-87
United States Tax Court
T.C. Memo 1990-95; 1990 Tax Ct. Memo LEXIS 95; 58 T.C.M. (CCH) 1512; T.C.M. (RIA) 90095; February 27, 1990
Towner Leeper, for the petitioners. Lewis J. Hubbard, Jr. and William R. Leighton, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax
Year
Deficiency
Sec. [1] 6653(a)(1)
Sec. 6653(a)(2)
1984
$ 5,699.00
$ 284.95 to be determined
1985
1,303.00
65.15 to be determined
*96 After a concession by respondent, the remaining issues for decision are (1) whether payments of $ 31,200 received by petitioner from her former husband under a divorce decree during each of the years in issue were taxable periodic payments of alimony; and (2) whether petitioner is liable for additions to tax within the meaning of section 6653(a)(1) and 6653(a)(2) for 1984 and 1985. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, Jerome S. and Maxine Reed, resided in El Paso, Texas, at the time their petition herein was filed. Maxine Reed (formerly Rubin) ("petitioner"), and Jerome Rubin were married on November 18, 1950. Three children, Richard, Alan, and Myra, were born of their marriage. On June 5, 1978, Jerome Rubin and petitioner entered into a written agreement of separation. This agreement of separation was later amended and there was substituted therefor an Amended Separation Agreement ("the ASA"), dated February 3, 1981, and executed by petitioner and Jerome Rubin, each being represented by independent counsel. The ASA included the *97 following stipulations: * * * 4. For purposes of equitable distribution of property, under Section 236b of the Domestic Relation Law, subject to the following, any property acquired by either spouse subsequent to the date of this Agreement shall not be deemed as having been acquired "during the marriage" or denominated marital property irrespective of the fact that a complaint and counterclaim has or could be served herein and irrespective of the dates of said filing. Thus, such property shall be exempt from distribution in the event of divorce. 5. On or before the date hereof, the Husband shall pay to the Wife, the sum of $ 100,000.00. It is the intention of the parties that the said sum of $ 100,000.00 to be paid to the Wife shall be deemed a lump sum settlement to the Wife shall be deemed a lump sum settlement to the Wife and therefore, free of taxation of any sort or kind whatsoever to the Wife and the Husband does, and in the event any taxing authority may make claim or sue thereon, the Husband shall defend said action or claim at his own expense and the Husband does agree to indemnify and save harmless the Wife of and from any and all taxes which may be imposed upon *98 and payable by her by any taxing authority, limited however, only to the extent of such taxes as may be so imposed on said sum of $ 100,000.00 [sic]. 6. The employment of the Wife by DAKOTA INTERNATIONAL CORP., shall be continued by the Husband, a principal of said corporation, until payment of the first weekly payment in the sum of $ 600.00 per week to the Wife from the Trust Agreement to be effectuated pursuant to paragraph 10 hereof. Upon the commencement of $ 600.00 per week, if requested, the Wife agrees to resign and terminate her employment with said Corporation and this provision of this Agreement shall constitute her resignation from such employment effective upon such event. * * * All salary paid to MAXINE RUBIN by reason of her employment by DAKOTA INTERNATIONAL CORP., commencing February 1, 1981, shall be credited against the minimum gross income from the Trust Fund * * * 10. To achieve the parties' agreement for the equitable distribution of their properties, the Husband shall simultaneously create an irrevocable trust for the benefit of the Wife and under the following terms and conditions: (A) A trust instrument will be executed by which the three children *99 of the parties, MYRA RUBIN, ALAN RUBIN, and RICHARD RUBIN shall be the Trustees. (B) The Husband shall cause MYRARICAL REALTY CORPORATION * * * to give to the Trustees, * * * a mortgage note for $ 300,000.00 bearing interest at 10.4% per annum, which interest shall be payable monthly to the Trustees, who, in turn, will pay over such income to the Wife, during her lifetime. Interest only shall be payable to the Wife during the term of said mortgage and the principal of the Trust, the mortgage, shall not be invaded in any event, except as hereinafter provided. (C) The term of such Trust and mortgage shall continue during the lifetime of the Wife as hereinbefore set forth. It is the intention of the parties that the Trust continue and the interest payable to the Wife pursuant to paragraph 10(B) continue even after the death of the Husband, if he predeceases the Wife and even if the Wife shall remarry the defendant or a third person. The remainder of the Trust and any accumulated and unpaid income shall become and remain the property of the three children of the parties hereto. (D) At the time of the execution of this Agreement, DAKOTA INTERNATIONAL CORP. * * * which corporation *100 occupies the mortgaged premises and of which the Husband is the principal, shall have, by a duly stated meeting of said Corporation, cause the Corporation in writing, guarantee the payments of interest only in the event of default by the mortgagor. * * * [sic] (E) * * * the Trustees shall have the right to invade the principal of the Trust in order to give the Wife, during her lifetime, a minimum of $ 31,200.00 from the Trust, annually or in the event of default at the option of the Wife, the DAKOTA CORP. on its guarantee, shall be mandated and shall pay the interest in the sum of $ 31,200.00 annually. * * * 16. The Husband and Wife acknowledge that the provisions herein made, are fair, adequate, reasonable and satisfactory and accordingly accept the same in lieu of and in full and final settlement and satisfaction of any and all claims and rights that either may now or hereafter have for the support and maintenance of the Wife and arising from the equitable distribution of property statute [sic]. * * * At trial, petitioner testified that, contrary to the recitals in paragraph 6 of the ASA, she did not receive $ 600 per week ($ 31,200 per annum) until after her divorce *101 from Jerome Rubin. Moreover, petitioner stated that she received $ 600 per week directly from Jerome Rubin rather than from the trustees. Petitioner also testified that she never worked for Dakota International Corporation. Pursuant to the terms of the ASA, Jerome Rubin further agreed to maintain insurance policies, listing petitioner as the irrevocable beneficiary until her death or remarriage. Under the terms of the ASA, Jerome Rubin also agreed to transfer his interest in other property, such as a condominium apartment, assorted furnishings, and an automobile, to petitioner. The Trust Agreement, referred to in paragraph 10 of the ASA, was executed contemporaneously with the ASA. Article XI of the Trust Agreement identified the express "purpose of this entire Trust" as "the support and maintenance of Maxine Rubin until her death." The trust terminates on petitioner's death and the corpus is to be divided between the three children. On February 5, 1981, the Supreme Court, Kings County, Brooklyn, New York, entered a judgment of divorce (the "divorce decree") in Maxine Rubin v. Jerome Rubin. The divorce decree included the following provisions: ORDERED, ADJUDGED AND *102 DECREED, that pursuant to stipulation dated February 4 [sic], 1981, the defendant is directed to pay to the plaintiff the sum of one hundred thousand ($ 100,000) dollars on the 3rd day of February, 1981, and it is further ORDERED, ADJUDGED AND DECREED, that pursuant to stipulation dated February 3rd, 1981, the defendant is directed to cause a trust fund to be created, an irrevocable trust comprising assets of $ 300,000 invested at 10.4% interest, wherein and whereby the plaintiff is guaranteed $ 31,200 a year, payable monthly commencing the 3rd day of February 1981, and it is further ORDERED, ADJUDGED AND DECREED, that pursuant to stipulation dated February 3rd, 1981, the payments to be paid plaintiff under the said irrevocable trust, shall survive the defendant's death and/or the plaintiff's remarriage, and the term thereof shall be until the death of the plaintiff herein, and it is further ORDERED, ADJUDGED AND DECREED, that the parties are specifically directed to comply with the terms and conditions set forth in the written stipulation and agreement, dated the 3rd day of February, 1981 * * * Pursuant to the ASA and the Trust Agreement, petitioner received $ 2,600 per *103 month, or $ 31,200 per year, during each of 1984 and 1985. Petitioner did not report the $ 31,200 annual payments as alimony received on Line 11 of her Forms 1040, or otherwise include the annual payments as income on either her 1984 or 1985 Federal income tax returns. In his notice of deficiency, respondent determined, inter alia, that "the guaranteed payment annually meets all the requirements of alimony" and increased petitioner's taxable income by $ 31,200 for each of the taxable years 1984 and 1985. OPINION The issue for decision is whether payments of $ 31,200 received by petitioner from her former husband under a divorce decree during each of the years in issue were taxable periodic payments of alimony. As a preliminary matter, we note that the vast majority of the relevant facts in the record before us were gleaned from the ASA, the Trust Agreement, and the divorce decree (hereinafter collectively referred to as "the divorce documents"), all of which were stipulated into evidence as joint exhibits. Respondent's determination that the annual payments were alimony is buttressed by the wording of the divorce documents because their wording establishes, prima facie, that *104 the annual payments were in the nature of a support allowance. Petitioner has the burden of proving that respondent's determination is in error. ; Rule 142(a). In determining whether the $ 31,200 annual payments are taxable to petitioner as periodic payments of alimony, we look to section 71. Section 71, in effect for the years in question, [2] provided that if a wife is divorced or legally separated from her husband under a decree of divorce or separate maintenance, the wife's gross income includes periodic payments received after such decree in discharge of a legal obligation which, because of the marital relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. Such payments are frequently characterized as alimony, taxable to the wife and deductible by the husband. In order to be characterized as alimony, payments must have been made in discharge of a legal obligation imposed because of the marital or family relationship, i.e., payments for support and not for the purpose of dividing marital property. Sections 71 and 215; ; *105 . For Federal income tax purposes, characterizing payments as either an allowance for support or a settlement of marital property is essentially a question of the parties' intent which, in turn, is to be resolved from all the facts and circumstances. , affd. without published opinion . The framework for marshalling and evaluating the relevant facts and circumstances bearing upon the parties' intent is provided by , wherein seven factors developed in the case law are specifically enumerated. The presence of the so-called "Beard factors" indicate that payments by one spouse to another are in the nature of a property settlement rather than a support allowance. Conversely, the absence of one or more of the Beard factors may tend to indicate that the payments are *106 more in the nature of a support allowance. . Accordingly, we now focus on an application, albeit in altered sequence, of the Beard factors to the facts and circumstances of the instant case. One factor to consider is whether the parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets. A prime indicator of intent, especially where, as here, both parties to an agreement are represented by counsel, is the specific language used by the parties in their agreement. Schottenstein v. commissioner, supra at 237. While, as in many similar cases, there is some evidence in this case that the parties gave consideration to a division of property, the agreement concerning the payment to petitioner of specified monthly payments for the remainder of her life clearly indicates that the primary concern of the parties was the support and maintenance for petitioner after the divorce. It is so stated in the Trust Agreement. She was to receive periodic payments of $ 600 per week for the remainder of her life, regardless of whether Jerome Rubin predeceased her or if she *107 remarried. To assure this a trust was established to provide the income to make these payments. The corpus of the trust was not to be used unless it was necessary to invade the corpus to meet the monthly payment. So it was income only to which she was entitled, not assets. She had no claim on the corpus of the trust and she could not dispose of it either during her lifetime or at her death -- which would be quite unusual if the parties intended a division of their property. Also the total amount petitioner was to receive under the ASA and divorce decree was not fixed. It would be rather difficult to arrive at an equitable distribution of marital property if the amount to be received by one of the parties were unknown. While it does not appear that much consideration was given to the real value of Jerome Rubin's assets, which would probably have been given if the parties were primarily concerned with an equal division of the marital property, consideration was given to the amount needed for the proper support and maintenance of petitioner. She was even put on the payroll of Jerome Rubin's company between the time they were separated and the court decree and separation agreement *108 went into effect, and her salary was $ 600 per week, the amount deemed necessary for her support in the settlement agreement, the trust, and the court decree. Furthermore, paragraph 5 of the ASA specifically states that petitioner was to receive $ 100,000 as a tax-free lump settlement whereas paragraph 10 fails to mention the tax attributes of the $ 31,200 payments. The difference in approach suggests that the parties to the agreement understood that the lump sum payment and the annual payments were designed to serve different purposes, the first a partial division of property and the second a provision for support and maintenance. The Trust Agreement, referred to in paragraph 10 of ASA, was executed contemporaneously with the ASA. Article XI of the Trust Agreement identified the express "purpose of this entire Trust" as "the support and maintenance of Maxine Rubin until her death." The Trust Agreement was a tool used to carry out the intentions of the parties and statements made therein are certainly relevant to the issue we are considering. The Equitable Distribution Law, adopted by the State of New York in 1980, and relied on by petitioner, relates to the ownership, as between *109 spouses, of property accumulated during the marriage. It permits husband and wife to divide the marital property by agreement. Section 236, Part A, relates to alimony; Part B relates to marital property. Petitioner argues that the ASA referred to Part B only which indicates the parties had a division of marital property in mind, and not alimony. However, the reference to section 236(B) was made solely in connection with the status of the property acquired after the date the ASA was executed. Therefore, the reference to the New York Domestic Relations Law does not shed light on what was intended by the parties when they included the $ 31,200 amended payment provision in the ASA. Here, the parties entered into an agreement, which was approved by the Court, under which Jerome Rubin was to pledge a part of his assets or income to provide an income for petitioner for life. Upon her death, the trust estate was to be distributed to the children of the marriage. The laws enacted by New York in 1980 did not control or dictate that agreement and are irrelevant to a determination of whether the monthly payments made to petitioner were alimony or a division of property. We think it is abundantly *110 clear from the circumstances, the evidence and the language and format of the divorce documents that the parties intended the monthly payments to be alimony and not a property settlement. Two other factors which Beard suggests for consideration in deciding the issue before us are (1) whether the recipient surrendered valuable property rights in exchange for the payments, and (2) whether the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during marriage. Petitioner has the burden of proof and she must show what property rights she had and which of those rights were surrendered in consideration for the annual payments. We find nothing in the record before us to indicate that an attempt was ever made to calculate the amount of, or otherwise determine which property rights petitioner surrendered in consideration for the annual payments. No doubt, petitioner had marital property rights under New York law, which she may have relinquished under the ASA. But the absence of such a calculation tends to indicate that the annual payments were designed to provide petitioner with continued *111 maintenance and support, i.e., alimony. Without evidence of what petitioner's marital property rights were or the value of what she relinquished, if any, we cannot conclude that petitioner surrendered valuable property rights in exchange for the monthly payments, or whether the amount of payments plus other property awarded to her equals approximately one-half of the property accumulated by the parties during their marriage. Finally, we note that petitioner's reliance on is misplaced because that case is clearly factually distinguishable from this case. Another factor to be considered under Beard is whether the payments were fixed in amount and not subject to contingencies such as death or remarriage of the recipient. It is clear from the record that the amount of the guaranteed payments was fixed and that petitioner is entitled to their full amount even though she may remarry. However, the annual payments do not represent amortized payments of a specific principal amount or a fixed amount payable in all events. The obligation to make annual payments to petitioner ceases upon her death, and only upon her death. *112 Petitioner nevertheless asserts that Jerome Rubin's financial obligations to petitioner are not contingent upon her death because the terms of the Trust Agreement somehow amount to a testamentary disposition of property to petitioner. Thus his "obligations do not end on petitioner's death -- he simply must pay their children rather than" petitioner. This contention has no effect on the question before us. Under the Trust Agreement Jerome Rubin had no power to make a testamentary disposition of the trust corpus. . Another factor is whether the payments were secured. The annual payments to petitioner were secured by the Trust Agreement and the assurance by Jerome Rubin that his company, Dakota International Corporation, would guarantee the interest payments from the trust. But petitioner was not the legal or equitable mortgagee of, nor did she have any ownership interest in the mortgaged property. See Yet another factor is whether the needs of the recipient were taken into consideration in determining the amount of the payments. The record does not reveal just *113 what petitioner's needs were but the fact that petitioner's interim monthly salary from Dakota was the same amount that she was to receive monthly from the trust indicates that her needs were taken into consideration in fixing the amount of the monthly payments. The Trust Agreement itself recites that it is understood that the purpose of the Trust was to support and maintain petitioner until her death. And paragraph 6 of the ASA provided that all salary paid by Dakota to petitioner commencing February 1, 1981, "shall be credited against the minimum gross income from the Trust Fund." Whether petitioner ever actually worked at Dakota would not change the fact that her needs were one of the main considerations in determining the terms of the Settlement Agreement. The last factor mentioned in Beard was whether a separate promise for support was provided elsewhere in the decree or agreement. The answer is no. While the $ 100,000 lump sum payment that Jerome Rubin was to pay petitioner under the Settlement Agreement would help petitioner meet her financial needs, it was clearly labeled as a "lump sum settlement to the wife and therefore, free of taxation of any sort." No such label *114 was attached to the monthly payments totalling $ 31,200 per year. Both parties were represented by counsel and this difference in language gives rise to an undeniable inference that the parties to the agreement recognized and agreed that the $ 31,200 annual payments were in the nature of support. Petitioner, who has the burden of proof that respondent's determination was erroneous, has pointed to no factors which even suggest a conclusion that the $ 31,200 annual payments are, or were intended to be, a division of the marital property, non-taxable to the recipient and non-deductible by the payor. Based on the record before us we find that the annual payments of $ 31,200 were alimony payments within the meaning of section 71 and therefore taxable to petitioner. Additions to Tax
Respondent has also determined that petitioner was liable for additions to tax under sections 6653(a)(1) and 6653(a)(2). Petitioner bears the burden of proof with respect to these additions to tax. ; ; Rule 142(a). In this regard, we find that petitioner has proffered nothing *115 more than conclusory statements in support of her assertion that she is not liable for the additions to tax under sections 6653(a)(1) and 6653(a)(2). Petitioner has not pointed to any evidence, much less provided persuasive reasoning, tending to show why her failure to report the annual alimony payments as income was reasonable under the circumstances. Petitioner has therefore not met her burden of proving that her failure to report the alimony payments as income was not attributable to negligence or intentional disregard of rules or regulations. Accordingly, respondent is sustained on both of these issues. In view of the foregoing, Decision will be entered under Rule 155. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the years at issue.↩
2. Since neither the Amended Settlement Agreement nor the Trust Agreement have been amended since 1984 the provisions of section 71 prior to the 1984 revisions are dispositive.↩